**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| IN RE | CASE NUMBER |
| **RISA ROZELLA HILL,** | **17-56656-SMS** |
| Debtor. | CHAPTER 7 |
| **RISA ROZELLA HILL,** | |
| Plaintiff, | ADVERSARY NUMBER |
| v. | **17-5131-SMS** |
| **EDUCATIONAL CREDIT MANAGEMENT CORPORATION,** | |
| Defendants. | |

<u>**PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**</u>

Plaintiff Risa Hill respectfully submits her proposed findings of fact and conclusions of law pursuant to the Court's August 21, 2018 Order and Notice of Trial (Doc. 51).

**I.      PROPOSED FINDINGS OF FACT**

  **A.      The Parties**

  1.      Plaintiff Risa Rozella Hill is the debtor in the Chapter 7 bankruptcy in which the above-styled proceeding arises. (Bankr. Doc. 1).

  2.      Defendant Educational Credit Management Corporation ("ECMC"), a Minnesota nonprofit corporation, moved to intervene in this proceeding on June 6, 2017, and was substituted for Navient Solutions, Inc. by Court Order on July 21, 2017. ECMC is the holder by

assignment of Ms. Hill's Federal Family Education Loan (FFEL) Program loans. (Adv. Doc. 4, 10).

### C.    The Student Loans

3.      Ms. Hill obtained a number of student loans to finance her education. The Student Loans at issue in this proceeding are as follows (PTO ¶ 8.A., Adv. Doc. 49):

| ID | Original Guarantor | Disb Date | Disb Amt | School | Type of Loan | Int Rate |
|---|---|---|---|---|---|---|
| ECMC 01 | KY Higher Ed Assist. | 8/7/2006 | $1,125.00 | Troy | Unsub | 6.8 |
| ECMC 02 | KY Higher Ed Assist. | 8/23/2006 | $6,375.00 | Troy | Unsub | 6.8 |
| ECMC 03 | KY Higher Ed Assist. | 9/22/2006 | $798.00 | Troy | Unsub | 6.8 |
| ECMC 04 | KY Higher Ed Assist. | 9/22/2006 | $4,933.00 | Troy | Sub | 6.8 |
| ECMC 05 | USA Funds | 5/20/2004 | $5,667.00 | Newman | Sub | 3.28 |
| ECMC 06 | USA Funds | 5/20/2004 | $6,667.00 | Newman | Unsub | 3.28 |
| ECMC 07 | USA Funds | 5/25/2005 | $18,911.89 | NA | Consolidation | 3.25 |
| ECMC 08 | USA Funds | 5/25/2005 | $27,310.87 | NA | Consolidation | 3.25 |
| ECMC 09 | USA Funds | 5/9/2006 | $2,078.00 | Keller | Unsub | 3.28 |
| ECMC 10 | USA Funds | 5/9/2006 | $1,411.00 | Keller | Sub | 3.28 |
| ECMC 11 | USA Funds | 3/9/2007 | $2,300.00 | Keller | Unsub | 6.8 |
| ECMC 12 | USA Funds | 3/9/2007 | $528.00 | Keller | Sub | 6.8 |
| ECMC 13 | USA Funds | 3/9/2007 | $1,412.00 | Keller | Unsub | 6.8 |
| ECMC 14 | USA Funds | 3/28/2007 | $7,360.00 | Keller | Sub | 6.8 |
| ECMC 15 | USA Funds | 5/8/2007 | $2,300.00 | Keller | Unsub | 6.8 |
| ECMC 16 | USA Funds | 11/7/2007 | $11,676.00 | Keller | Unsub | 6.8 |

| ECMC 17 | USA Funds | 7/17/2007 | $4,682.00 | Keller | Unsub | 6.8 |
|---|---|---|---|---|---|---|
| ECMC 18 | USA Funds | 11/7/2007 | $8,500.00 | Keller | Sub | 6.8 |
| ECMC 19 | Ill. Student Assist. Corp | 8/3/2005 | $800.00 | Keller | Unsub | 3.28 |
| ECMC 20 | Ill. Student Assist. Corp | 8/3/2005 | $8,500.00 | Keller | Sub | 3.28 |
| ECMC 21 | Ill. Student Assist. Corp | 11/22/2005 | $2,200.00 | Keller | Unsub | 3.28 |
| ECMC 22 | Ill. Student Assist. Corp | 1/10/2006 | $1,100.00 | Keller | Unsub | 3.28 |
| ECMC 23 | Ill. Student Assist. Corp | 2/17/2006 | $778.00 | Keller | Unsub | 3.28 |

## C. Procedural History

4.      Ms. Hill filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, Case No. 17-56656-SMS.

5.      Ms. Hill commenced the above-styled adversary proceeding by filing a Complaint on May 19, 2017. (Adv. Doc. 1). The Complaint originally named Navient Solutions, Inc. ("Navient") and the United States of America, acting through its Department of Education as defendants.

6.      As noted above, the Court substituted ECMC for Navient on July 21, 2017. (Adv. Doc. 10).

7.      The Court entered Ms. Hill's discharge on August 14, 2017 (Bankr. Doc. 16).

8.      Upon consent of the Debtor and the United States, the Court entered an Order discharging Ms. Hill's student loans held by the United States on April 17, 2018 (Adv. Doc. 42).

9.      The Court entered a Joint Consolidated Pretrial Order ("PTO") on July 12, 2018. (Adv. Doc. 49). In the PTO, ECMC unilaterally reduced the Debtor's student loan balance to $70,000. (PTO ¶ 8.B.).

3

**D.      Testimony of Risa Hill**

10.      The Court heard testimony from one witness, Debtor Risa Hill.

11.       Ms. Hill first testified regarding her income and expenses. Ms. Hill testified that

she relies on government assistance for income, food, shelter, and medical care.

12.      The parties stipulated that Ms. Hill receives $1341 per month in Social Security

Disability Insurance. (PTO ¶ 8.BB.). Ms. Hill's testified that amount is her sole monthly income.

Ms. Hill testified that she previously received $16 in food stamps, but failed to file the

appropriate paperwork to renew them as of the trial date. Ms. Hill testified that she receives a

housing voucher based on disability and as of the bankruptcy filing date paid only $205 toward

her rent, but now pays $191. The parties stipulated that based on Ms. Hill's household size of 1,

she is below 150% of the applicable federal poverty guideline of $1,517.50 per month. (PTO ¶

8.CC.). Ms. Hill testified that while she had to scrap her car when it stopped working, she has

been saving up for a new car with the assistance of her representative payee, at which point she

intends to renew her vehicle insurance.

13.      Ms. Hill testified that her average monthly expenses are as follows:

| | | |
|---|---|---|
| Rent | - | $191 |
| Renter's Insurance | - | $22 |
| Utilities | - | $175 |
| Food | - | $360 |
| Clothing | - | $50 |
| Personal Care | - | $75 |
| Medical Co-Pays | - | $40 |
| Transportation | - | $95 |
| Vehicle Insurance | - | $121 |

The expenses total $ 1129. (Testimony of Risa Hill, Sch. I/J, Pl.'s Ex. Q). Ms. Hill testified that she has, on average $212 of surplus income per month. (*Id.*) However, Ms. Hill testified that she relies on that surplus for unexpected expenses.

14.     Prior to the filing of the bankruptcy case, Ms. Hill's student loan payments on her respective student loans were as follows:

a. 1-01 Stafford - Unsubsidized, monthly payment of $16.93;
b. 1-03 Stafford - Unsubsidized, monthly payment of $96.21;
c. 1-04 Stafford - Subsidized, monthly payment of $62.15;
d. 1-05 Stafford - Unsubsidized, monthly payment of $11.99;
e. 1-07 Stafford - Unsubsidized, monthly payment of $34.57;
f. 1-08 Stafford - Unsubsidized, monthly payment of $21.24;
g. 1-10 Stafford - Subsidized, monthly payment of $6.65;
h. 1-11 Stafford - Subsidized, monthly payment of $92.92;
i. 1-12 Stafford - Unsubsidized, monthly payment of $34.57;
j. 1-13 Stafford - Unsubsidized, monthly payment of $70.51;
k. 1-14 Stafford - Unsubsidized, monthly payment of $186.87;
l. 1-15 Stafford - Subsidized, monthly payment of $113.74;
m. 2-01 Stafford - Subsidized, monthly payment of $56.82;
n. 2-02 Stafford - Unsubsidized, monthly payment of $84.92;
o. 2-03 Consolidation, monthly payment of $227.93;
p. 2-04 Consolidation, monthly payment of $185.46;
q. 2-05 Stafford - Subsidized, monthly payment of $78.19;
r. 2-06 Stafford - Unsubsidized, monthly payment of $9.90;
s. 2-07 Stafford - Unsubsidized, monthly payment of $27.00;
t. 2-08 Stafford - Unsubsidized, monthly payment of $13.45;
u. 2-09 Stafford - Unsubsidized, monthly payment of $9.46;
v. 2-14 Stafford - Subsidized, monthly payment of $14.93;
w. 2-15 Stafford - Unsubsidized, monthly payment of $26.47;

for a total of $1,482.88 per month. (Navient Account Summary, Pl.'s Ex. K).

15.     The Court finds Ms. Hill's testimony regarding her income and expenses to be credible. The Court finds that Ms. Hill's expenses are reasonable in light of her circumstances. The Court finds that Ms. Hill has maximized her income by applying for and obtaining disability and food stamps. The Court finds she has taken steps to limit her expenses in light of her limited income, including by obtaining a housing voucher to reduce her rent payment to $191.

5

16.     The Court finds that in light of the Debtor's monthly income being below 150% of the poverty line, her reasonable expenses, her meager surplus income and the amount of her student loan debt payments, that Debtor could not maintain, based on current income and expenses, a "minimal" standard of living for herself if forced to repay her student loans.

17.     Ms. Hill next testified about her education.

18.     Ms. Hill enrolled at Wichita State University in 1999 after serving in the Army. She graduated with a B.A in 2002 (Testimony of Risa Hill; Wichita State Transcript, Pl.'s Ex. P).

19.     In summer of 2003, she enrolled at Newman University, and left in 2004 without a degree. (Newman University FA Award Letter, Statement by Term, Complete Schedule, Pl.'s Ex. O).

20.     In early 2005, Ms. Hill consolidated several of her student loans. (Master Promissory Note dated Jan. 8, 2005, Pl.'s Ex. J2).

21.     In September of 2005, she enlisted with the Army National Guard, and while enlisted, attended school at DeVry University, where she graduated with an MBA in Fall 2008. (DeVry Student Summary Report; Pl's Ex. M).

22.     During that time, she took three online courses at Troy University. (Troy Transcript, Pl.'s Ex. N).

23.     She enrolled at DeVry for a few more courses in 2009, but did not obtain any other degrees. (Pl.'s Ex. M).

24.     Ms. Hill testified that at the time she enrolled at each of these schools, she had not been diagnosed with bipolar disorder.

25.    Ms. Hill testified that throughout her homelessness and mental illness, she kept in contact with her loan servicer, and that on the petition date, none of her student loans were in default.

26.    The parties stipulated to the fact that Ms. Hill requested and received the following deferments from Navient, her loan servicer:

- DEFERMENT - HARDSHIP 04/27/09 - 12/20/09
- DEFERMENT - SCHOOL 01/04/10 - 04/25/10
- DEFERMENT - UNEMPLOYMENT 06/01/11 - 11/30/11
- DEFERMENT - UNEMPLOYMENT 09/09/13 - 04/09/14
- DEFERMENT - HARDSHIP 06/26/16 - 06/25/17

(PTO ¶ 8.Y.)

27.    The parties stipulated to the fact that Ms. Hill requested and received the following forbearances from Navient:

- FORBEARANCE - VERBAL 12/01/11 - 05/26/12
- FORBEARANCE - VERBAL 05/27/12 - 09/26/12
- FORBEARANCE - ADMIN 09/27/12 - 01/26/13
- FORBEARANCE - ADMIN 05/27/13 - 07/26/13
- FORBEARANCE - ADMIN 04/10/14 - 11/04/14
- FORBEARANCE - ADMIN 01/04/15 - 03/26/15
- FORBEARANCE - ADMIN 03/27/15 - 05/26/15
- FORBEARANCE - ADMIN 06/26/15 - 07/26/15
- FORBEARANCE - ADMIN 07/27/15 - 05/26/16

(PTO ¶ 8.Z.)

28.    Ms. Hill also testified that she discussed income based repayment and disability discharge with her servicer, but struggled to complete the necessary paperwork.

29.    Ms. Hill testified that she did not want to enroll in an income-based repayment plan because she was worried about recertifying annually for 20 years. She further testified that she was concerned that the process would take 20 years, that having her student loans hang over

her head for 20 years caused her a great deal of anxiety, and that she worried that her SSDI could be offset if she failed to recertify due to her condition and later went into default.

30.     Ms. Hill next testified about her mental illness, homelessness, and involuntarily hospitalization.

31.     The Court found Ms. Hill's testimony about the onset of her mental illness credible and harrowing. Ms. Hill testified that in October of 2013, while working in Texas, she began to experience symptoms of psychosis.

32.     Ms. Hill testified that her psychosis rendered her unable to work, and that she found herself in an airport in Louisiana with no memory of how she got there.

33.     She was hospitalized several times in Texas, Arizona, and Florida, and was homeless for several months. Ms. Hill testified that she was diagnosed with Bipolar Type 1 Disorder with psychotic features.

34.     On June 2, 2014, Ms. Hill was involuntarily committed by the Georgia Department of Behavioral Health & Developmental Disabilities. (Form 1013, Pl.'s Ex. B). The DBHDD examiner noted that she was experiencing auditory hallucinations, was very depressed, and noted her diagnosis of bipolar disorder with psychotic features. (*Id.*). The examiner noted that Ms. Hill had committed or expressed recent acts or threats of violence to herself, noting she "wants to kill herself."

35.     On or around June 3, 2014, Ms. Hill was admitted to the Southern Crescent Behavioral Health System, Anchor Hospital Campus. (Form 1014, Pl.'s Ex. D; Form 1015, Pl.'s Ex. C).

36.     After being admitted as an inpatient, Ms. Hill received an initial Psychiatric

Evaluation. (Initial Psychiatric Evaluation, 6/4/14, Pl.'s Ex. E). The examiner indicated that she

was "[d]angerous to self, others, or property and is requiring a controlled environment,"

reporting "[h]allucinations, delusions, anxiety, depression resulting in significant loss of

functioning," [a]cute disorganized / bizarre behavior or psychomotor agitation or retardation that

interferes with the activities of daily living (ADL) so the patient cannot function at a less

intensive level of care," "[e]valuation or treatment of a psychiatric co-morbidity (risk of suicide,

violence, severe depression) warranting inpatient admission for patients with a dementia

disorder," "[f]ailure in social, interpersonal, occupation, and / or educational functioning."

37.     Ms. Hill was discharged on June 11, 2014. (Discharge Summary, 6/11/14, Pl.'s

Ex. F). The discharge summary noted that at intake, she was a danger to herself and others

requiring a controlled environment, and that she hallucinated voices telling her to "die." (*Id.*).

The "Social and Family History" noted that she was homeless.

38.     Ms. Hill was evaluated by the DeKalb Community Service Board on October 10,

2014. (Psychiatric Evaluation, Pl.'s Ex. H). The examiner noted that she called EMS because

"she thought someone put something in her water." (*Id.*) The examiner noted that she was "very

psychotic in the emergency room per report," "feels many people are out to harm her," and that

"the doctors [at Mercy Mobile] were not really doctors, they were imposters." (*Id.*).

39.     Ms. Hill was again admitted to Anchor Hospital on November 2, 2014, with the

chief complaint of mood swings. (Discharge Summary 11/10/14, Pl.'s Ex. G). Ms. Hill was still

homeless at this point. (*Id.*). The examiner noted her "Insight and judgment limited. ADLs are

poor." She was discharged on November 10, 2014. (*Id.*).

40.    Ms. Hill applied for Social Security Disability Insurance ("SSDI"). The Social Security Administration determined that Ms. Hill met the standard for disability under their rules and granted her Supplemental Security Income during the standard five month waiting period for SSDI. 42 U.S.C.A. § 423(c)(2). (BPQY, Pl.'s Ex. A). She began receiving SSDI after that period. The Social Security Administration determined Ms. Hill's date of disability onset as October 15, 2013, and she still receives SSDI. (*Id.*). Ms. Hill has a representative payee who receives her SSDI payments and releases the funds for her. (*Id.*). Her medications and therapy are largely funded by Medicare and a Medicare Savings Program. (*Id.*). Ms. Hill testified that her only income is the SSDI, and she does not work.

41.    Ms. Hill testified about her medications she takes. Ms. Hill testified that her medication has side effects, including tremors and drowsiness, which would further interfere with her ability to hold a stable job. Ms. Hill testified that she believes that without her medication, her condition would deteriorate as before.

**DEPOSITION TESTIMONY**

42.    By stipulation, the parties each offered the deposition testimony of Christopher P. Andrews, Licensed Professional Counselor at trial.

43.    Mr. Andrews is the Program Manager for Adult Outpatient Services at Grady Park Place (Dep. Andrews at 7:10 – 7:15).

44.    As a Licensed Professional Counselor, Mr. Andrews has the ability to diagnose and treat mental illnesses. (*Id.* at 14:11 – 14:22)

45.     Mr. Andrews meets with Ms. Hill for her PTSD and anxiety and discusses her bipolar disorder and features. (*Id.* at 35:16; Procedures by Andrews, Christopher, LPC at 5/24/2017, Pl.'s Ex. L).

46.     Mr. Andrews testified that Ms. Hill "has a diagnosis of bipolar disorder with psychotic features." (Dep. Andrews at 93:10-11).  Mr. Andrews explained that "a person with bipolar goes through emotional mood swings usually from a depressed state, sometimes to a manic state, and it's not a mood swing that necessarily follows a justifiable reason." (*Id.* at 93:12-16).

47.     Mr. Andrews testified that Ms. Hill's bipolar disorder also has a psychotic feature "which means at times whatever her mind thinks is her reality. So if at this moment she saw four people running at her trying to stab her and kill her, that's what she – that's what she actually believes is happening." (*Id.* at 94:5-10).

48.     Mr. Andrews admitted that counseling alone cannot treat psychotic features, and that medication is necessary. (*Id.* at 35:23-25).

49.     Mr. Andrews was unable to state if Ms. Hill's bipolar disorder and psychosis can be managed in a work situation on a regular basis (*Id.* at 69:2-4).

50.     Mr. Andrews testified that if she were to lose access to her medications, "her situation would deteriorate." (*Id.* at 97:25–98:5).

51.     Finally, Mr. Andrews testified that bipolar disorder is a lifelong condition. (*Id.* at 98:25).

## II.     PROPOSED CONCLUSIONS OF LAW

### A.  Jurisdiction and Authority

The Court has jurisdiction over this proceeding under 28 U.S.C. §§ 157(b)(2)(I) and

1334(b), as it is a proceeding to determine the discharge ability of a debt, and thus arises under

Title 11. No party has raised an objection to the Court entering final judgment in this proceeding,

and the Court concludes it has such authority. Venue is proper in the United States Bankruptcy

Court for the Northern District of Georgia, Atlanta Division, pursuant to 28 U.S.C. §1409(a).

### B.  Legal Standard

Student loans are excepted from discharge under Section 523[1] unless such exception

"would impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. §

523(a)(8). "Undue hardship" is not defined in the Code, and the prevailing test, as adopted by the

Eleventh Circuit, is set forth in *Brunner v. New York State Higher Education Services Corp*., 831

F.2d 395 (2d Cir.1987). *In re Cox*, 338 F.3d 1238 (11th Cir. 2003) (adopting *Brunner*).

> To support a finding of undue hardship under *Brunner*, the debtor must show:
>
> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans;
> (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and
> (3) that the debtor has made good faith efforts to repay the loans.

*Cox*, 338 F.3d at 1241 (quoting *Brunner*, 831 F.2d at 396). The standard of proof for each of

these prongs is a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991)

---

[1] All references in body text to "Sections" or "the Code" refer to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (2018), unless otherwise indicated.

("[T]he standard of proof for the dischargeability exceptions in 11 U.S.C. § 523(a) is the ordinary preponderance-of-the-evidence standard").

### C. Analysis

For the reasons that follow, the Court concludes that Debtor has met her burden of proof that excepting her student loans from discharge would impose an undue hardship.

> **1. Ms. Hill cannot maintain a "minimal" standard of living if forced to repay her loans.**

The first *Brunner* prong requires the Court to determine whether can or cannot "maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans." *Cox*, 338 F.3d at 1241 (quoting *Brunner*, 831 F.2d at 396). Implicit in "forced to repay" is the assumption "money [is] changing hands. It does not assume a loan, repayment of which is payment of nothing." *In re Castillo*, No. 00-42039 J7, 2002 WL 1917311, at *1 (Bankr. N.D. Cal. Aug. 19, 2002).

The undisputed evidence shows that Ms. Hill lives below 150% of the poverty line for her household size. (PTO ¶ 8.BB–CC). Ms. Hill relies on fixed income from the government as a result of her disability. She relies on government assistance for her medical care, food, and housing. The Court finds that all of Ms. Hill's expenses are reasonable under the circumstances, and that her meager surplus income would likely not even pay the monthly interest on her loans, let alone ever pay off the principal balance.[2] Accordingly, the Court holds that Ms. Hill has met her burden under the first *Brunner* prong.

---

[2] The fact that ECMC has unilaterally reduced Ms. Hill's loan balance to $70,000 does not change this analysis. Even assuming repayment based on this lower amount, at a standard 6% fixed rate for graduate loans over a standard 10-year repayment, Ms. Hill could not afford the monthly payment of $777.14, which would constitute over half of her monthly income. *See* Annual Notice of Interest Rates of Federal Student Loans Made Under the William D. Ford Federal Direct Loan Program On or After July 1, 2013, 82 Fed. Reg. 29062 (June 27, 2017) (6%

**2.   Ms. Hill has shown her inability to maintain a minimal standard of living likely will persist for a significant period.**

The second *Brunner* prong is inextricably linked to the first. While the first determination looks to the present financial circumstances, the second questions whether these present circumstances will likely persist into the future. The specific question is whether "additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans." *Cox*, 338 F.3d at 1241 (quoting *Brunner*, 831 F.2d at 396). For the following reasons, the Court holds that Ms. Hill has met her burden on the second prong.

The leading case on the second *Brunner* prong in the Eleventh Circuit is *ECMC v. Mosley (In re Mosley)*, 494 F.3d 1320 (11th Cir. 2007). In *Mosley*, the bankruptcy court permitted the debtor to establish evidence of additional circumstances with his own testimony. The debtor "testified that his depression and chronic back pain have frustrated his efforts to work, and thus his ability to repay his loans, as well as to provide himself with shelter, food, and transportation, for several years." *Id.* at 1326. The debtor in that case "relie[d] on public assistance programs for health care and food." *Id.* The Court of Appeals held that the bankruptcy court did not abuse its discretion in admitting this testimony. *Id.*

Like the debtor in *Mosley*, Ms. Hill compellingly testified about the bleakness of her situation. Ms. Hill, like Mr. Mosley, struggled with mental illness and homelessness, and relies on government benefits for food, shelter, and health care. The Court credits Ms. Hill's testimony regarding her involuntary commitment and her experience of hallucinations. Ms. Hill's account

---

fixed rate for graduate loans made between July1, 2017 and July 1, 2018); 34 C.F.R. § 682.209(a)(7)(ii) (standard repayment term "not more than 10 years").

was corroborated by the various medical records admitted into evidence and the deposition testimony of Chris Andrews.

While not binding on this Court, the fact that Ms. Hill has been determined disabled by the Social Security Administration is probative of the second factor. Plaintiff's Trial Brief outlined the relevant standards for a determination of disability by SSA.

Under Title II of the Social Security Act, Social Security Disability Insurance is authorized for disabled or blind adults who are insured by their own (or certain family members') contributions to Social Security trust funds. Social Security Program Operations Manual System ("POMS"), DI 00115.001(A). Social Security does not pay SSDI to people who are not totally disabled. *Id.*

For the purposes of SSDI, an individual cannot just be disabled in the common sense of the word; she must be unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.A. § 423(d)(1)(A). Substantial gainful activity is defined as "work that – (a) involves doing significant and productive physical or mental duties; and (b) is done (or intended) for pay or profit." 20 C.F.R. § 404.1510. Explicitly, other activities are ordinarily not the substantial gainful activity Social Security considers in this analysis, including self-care, therapy, general social activities, and everyday tasks. 20 C.F.R. § 404.1572. The SSA must determine whether, with consideration of all of an applicant's impairments and limitations, she can engage substantial gainful work that is within the national economy. *Id.* at (d)(2). The Court finds SSA's

15

determination that Ms. Hill is unable to engage in any substantial gainful activity probative of the second *Brunner* prong.

Finally, the testimony of Christopher P. Andrews, LPC further substantiates Ms. Hill's claim. Mr. Andrews meets with Ms. Hill for her PTSD, anxiety, and her bipolar disorder. (Dep. Andrews at 35:16; Procedures by Andrews, Christopher, LPC at 5/24/2017, Pl.'s Ex. L).

Mr. Andrews confirmed Ms. Hill's various diagnoses. He testified that her bipolar diagnosis is a lifelong condition. (Dep. Andrews at 98:25). He explained that her psychosis "means at times whatever her mind thinks is her reality." Mr. Andrews testified that counseling alone cannot treat psychotic features, and that medication is necessary. In fact, without Ms. Hill's medications, "her situation would deteriorate." (*Id.* at 97:25–98:5).

All of this evidence weighs in favor of a determination that Ms. Hill's inability to repay the loans is likely to persist for a significant portion of the student loan term.

### 3.   Ms. Hill has made good faith efforts to repay the loans.

The final Brunner prong examines the Debtor's good faith efforts to repay the loans. *Cox*, 338 F.3d at 1241 (quoting *Brunner*, 831 F.2d at 396). In analyzing the final prong, courts look to whether the debtor's inability to pay resulted "from factors beyond [the debtor's] reasonable control." *Educ. Credit Mgmt. Corp. v. Mosley (In re Mosley)*, 494 F.3d 1320, 1327 (11th Cir. 2007). Thus, "failure to make a payment, standing alone, does not establish a lack of good faith." *Id.* (quoting *Educ. Credit Mgmt. Corp. v. Polleys*, 356 F.3d 1302, 1311 (10th Cir. 2004) (internal quotation marks omitted); s*ee also McGinnis v. Pennsylvania Higher Education Assistance Agency (In re McGinnis)*, 289 B.R. 257, 267 (Bankr. M.D. Ga. 2003) ("Actual payments are not necessary to show good faith." (citations omitted)).

16

The evidence presented at trial showed that Ms. Hill remained in constant communication with her servicer, was never in default on the loans (even during and immediately after her psychotic break), consolidated her loans, and requested deferments and forbearances to avoid defaulting on the student loans. Courts have recognized these actions as good faith efforts. *In re Michaud*, No. 8:13-AP-603-KRM, 2014 WL 3362157, at 4 (Bankr. M.D. Fla. 2014); *In re Fields*, No. AP 10-70021, 2012 WL 3235844, at 7 (Bankr. N.D. Ala. 2012); *see also In re Barrett*, 487 F.3d 353, 365 (6th Cir. 2007); *In re Braine*, No. 10-10391, 2012 WL 909317, at 8 (Bankr. D. Vt. 2012).

ECMC asserts that Ms. Hill should enroll in an income-based repayment (IBR) plan rather than seeking a discharge of her loans. While courts in this circuit have considered the availability of IBR-type plans to be relevant to good faith, courts have also noted a need to "evaluate the debtor's conduct in the broader context of her entire financial picture." *In re Gordon*, No. ADV.07-009049-MGD, 2008 WL 5159783, at 8 (Bankr. N.D. Ga. 2008), quoting *In re Nary,* 253 B.R. 752, 768 (N.D. Tex.2000).

The law does not require Ms. Hill to prove that she entered into another repayment plan or tried to discharge the student loans in another way. A debtor's choice not to seek income-based repayment is not per se bad faith. *In re Johnson*, 541 B.R. 759, 766–67 (Bankr. N.D. Ala. 2015) ("The U.S. Department of Education's repayment plans may not be used as a sword to prevent dischargeability of student loans if the debtor chooses not to participate in them"). As Ms. Hill points out in her trial brief, nearly all federal student loans are eligible for some form of income-based repayment. If the availability of such payments defeated any 523(a)(8) claim, no federal student loan borrower would be eligible for a discharge. "Unlike the Income Contingent

Repayment Plan, bankruptcy relief is designed to give the honest but unfortunate debtor a fresh start, and although government guaranteed student loans are meant to be more difficult to discharge than general unsecured debts, they are not meant to be impossible to discharge." *Rutherford*, 317 B.R. 865, 880–81, quoting *In re Korhonen*, 296 B.R. 492, 497 (Bankr. D. Minn. 2003).

   In the context of her entire financial picture, the fact that Ms. Hill's payments under IBR would be $0 militates against finding that IBR would be a viable alternative to a discharge. The evidence shows that Ms. Hill has not had a job for 5 years, and the court has concluded that Ms. Hill's current circumstances are likely to continue for a substantial period. Accordingly, forcing her to remain on income-based repayments of $0 for years and years would be a futile exercise; it would benefit neither the taxpayers nor Ms. Hill. It would needlessly deny her the fresh start that she has worked for in all other aspects of her life, including by pulling herself from homelessness. At the very worst, it would continue to contribute to her anxiety and depression and, if she were to miss a recertification, could even threaten her livelihood if her SSDI were offset.

   Furthermore, assuming a hypothetical 20-year repayment period vastly extends the undue hardship inquiry beyond what the *Brunner* court could have imagined. The Court is persuaded by Judge Frank's analysis of the applicable "repayment period" in *Price v. DeVos (In re Price)*, 573 B.R. 579 n.24, 599 (Bankr. E.D. Pa. 2017), *rev'd on other grounds*, *DeVos v. Price*, 583 B.R. 850 (E.D. Pa. 2018).[3] Judge Frank noted that using a 10-year contractual repayment period best

_____

[3] *Price* was reversed on other grounds. *See DeVos v. Price*, 583 B.R. 850, 855–56 (E.D. Pa. 2018) ("The bankruptcy court, after discussing *Brunner's* historical context and evaluating the parties' arguments, determined that the repayment period should be based on the original

18

comported with the historical context of *Brunner* and limits the inquiry to "specific articulable facts, not unfounded optimism." *Id.* at 604 (quoting *Educ. Credit Mgmt. Corp. v. Polleys*, 356 F.3d 1302, 1310 (10th Cir. 2004) (internal quotations omitted)). Judge Frank expressed concern that using a hypothetical extended or income-contingent repayment period not actually chosen by the debtor "would be making the Debtor's financial decisions for her, treating her as though she is actually on this repayment plan, while she is still contractually obligated to make much larger monthly payments" *id.* at 606, and that "[s]uch a failure to engage in a grounded, realistic analysis not only creates the danger of an overly-strict application of Brunner, but also raises legitimate concerns about both the integrity of the judicial decision making process, as well as the public's perception of the process." *Id.* at 604.

Lastly, the Court rejects ECMC's argument that Ms. Hill should be required to apply for an administrative discharge of her student loans rather than seeking the protection of a bankruptcy discharge. *Brunner* asks whether the debtor has made "good faith efforts to **repay** the loans." *Brunner*, 831 F.2d 395, 396 *(emphasis added)*. It contains no requirement to **avoid paying** the loans by applying for administrative cancellation.  Such an administrative exhaustion requirement finds no basis in the code, either. Other portions of the Code require administrative exhaustion, *see e.g.*, 11 U.S.C. § 505(a)(2)(B), and if Congress wanted to impose such a requirement in Section 523(a)(8), it presumably would have.

---

contract term . . . . The length of the repayment term as it relates to the second element of *Brunner* is a difficult question. For purposes of this decision, however, the court does not need to resolve this issue.").

### III.    Conclusion

Ms. Hill respectfully requests the Court enter the above proposed findings of fact and conclusion of law after trial, and enter judgment for the Plaintiff discharging her student loans.

Respectfully submitted September 13, 2018.

> /s/ Cari E. Hipp_____
> **Cari E. Hipp**
> Ga. Bar. No. 106361
> Nathan Juster
> Ga. Bar. No. 993962
> Attorneys for Plaintiff/Debtor
> ATLANTA LEGAL AID SOCIETY, INC.
> 777 Cleveland Ave SW
> Suite 410
> Atlanta, GA 30315
> (678) 702-8413 (phone)
> (404) 669-0944 (fax)
> chipp@atlantalegalaid.org

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| IN RE | CASE NUMBER |
| **RISA ROZELLA HILL,** | **17-56656-SMS** |
| Debtor. | CHAPTER 7 |
| **RISA ROZELLA HILL,** | |
| Plaintiff, | ADVERSARY NUMBER |
| v. | **17-5131-SMS** |
| **EDUCATIONAL CREDIT MANAGEMENT CORPORATION,** | |
| Defendants. | |

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 13, 2018, I filed Plaintiff's Proposed Findings of Fact filed in the above-styled adversary proceeding using the CM/ECF system which will automatically send e-mail notification of such filing to the following persons:

Thomas W. Joyce
JONES CORK, LLP
PO Box 6437
Macon, GA 31208-6437

/s/ Nathan Juster _____
Nathan Juster
Ga. Bar. No.  993962
ATLANTA LEGAL AID SOCIETY, INC.
246 Sycamore Street
Suite 120
Decatur, GA 30030-3434
770-817-7542
770-817-7534 (fax)
ntjuster@atlantalegalaid.org